**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mary Ruth Jones, | No. CV-23-00704-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Mary Ruth Jones seeks review of the Social Security Commissioner's final decision denying her disability insurance benefits. Because the Administrative Law Judge ("ALJ") committed harmful legal error in evaluating Jones's symptom testimony, the commissioner's decision is vacated and remanded for further administrative proceedings.

**I.     Background**

Jones filed an application for disability insurance benefits on January 24, 2020, alleging a disability beginning on June 28, 2019 (Administrative Record ("AR") 13, Doc. 14-2 at 14). Jones alleged she was disabled and therefore unable to work because of medical conditions including lupus, fibromyalgia, cervical and lumbar degenerative disc disease, inflammatory arthritis, a right rotator cuff tear, migraines, and orthostatic tachycardia/generalized postganglionic sympathetic autonomic neuropathy. (AR 407.)

Jones's claim was denied initially and on reconsideration. (AR 86–87, 105–06.) Jones then presented her case to an ALJ who found that she was not disabled. (AR 33, 40–73.) The Appeals Council denied Jones's request for review. (AR 1.) Jones then appealed

to this court.

## II. Legal Standard

The court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance" of evidence and is such that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). The court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

## III. Discussion

Jones argues that the ALJ committed two materially-harmful legal errors in analyzing her claim: (1) he rejected the assessments of her primary care physician Dr. Todd Lincoln and her neurologist Dr. David Saperstein without providing an adequate justification for doing so; and (2) he rejected Jones's symptom testimony without adequate justification. Jones seeks a remand for a calculation of benefits or, in the alternative, for further administrative proceedings.

### A. The ALJ's Five-Step Disability Evaluation Process

Under the Social Security Act, a claimant for disability insurance benefits must establish disability prior to the date last insured. 42 U.S.C. § 423(c); 20 C.F.R. § 404.131. A claimant is disabled under the Act if she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment that has lasted, or can be expected to last, for a continuous period of twelve months or more. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).

Whether a claimant is disabled is determined by a five-step sequential process. *See Woods v. Kijakazi*, 32 F.4th 785, 787 n.1 (9th Cir. 2022) (summarizing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step three, the claimant must show that her impairment or combination of

impairments meets or equals the severity of an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). At step four, the claimant must show her residual functional capacity ("RFC")—the most she can do with her impairments—precludes her from performing her past work. *Id.* If the claimant meets her burden at step three, she is presumed disabled and the analysis ends. If the inquiry proceeds and the claimant meets her burden at step four, then at step five the Commissioner must determine if the claimant is able to perform other work that "exists in significant numbers in the national economy" given the claimant's RFC, age, education, and work experience. *Id.* at § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.*

The ALJ found that Jones met her burden at step one and two. (AR 16.) But at step three, the ALJ determined Jones's impairments or combination of impairments did not meet or medically equal the severity of impairments listed in the relevant appendix. (AR 20–23.) Moving to step four, the ALJ determined Jones could perform "light work" as defined at 20 C.F.R. § 404.1567(b) with additional postural, manipulative, and environmental limitations. (AR 23). With those limitations, the ALJ found that Jones's RFC meant she could perform past relevant work as a personnel scheduler and outpatient receptionist, so she was not disabled. (AR 31.) As an alternative step-five finding, Jones could perform other jobs that exist in significant numbers in the national economy such as a ticket taker, counter clerk, and furniture rental clerk. (AR 31–32.)

In evaluating Jones's RFC, the ALJ considered her entire medical record, but discounted the assessments of Dr. Lincoln and Dr. Saperstein because he found them unsupported by their treatment records and inconsistent with Jones's medical record as a whole. (AR 30.) The ALJ also discounted part of Jones's testimony because it was not entirely consistent with the evidence in the record. (AR 24.) Jones argues these were harmful legal errors. (AR 24, 39–30.)

## B. The ALJ's Evaluation of Medical Opinions

For claims filed after 2017 like Jones's, the most important factors an ALJ considers in evaluating medical opinions are "supportability" and "consistency." *Woods*, 32 F. 4th at

791 (citing 20 C.F.R. § 404.1520c(a)). "Supportability" refers to the extent to which a medical source grounds the opinion in an explanation of the relevant objective medical evidence. *Id.* "Consistency" refers to the extent to which the opinion accords with evidence from other medical and nonmedical sources. *Id.* at 792. An ALJ must explain how he considered the supportability and consistency factors when explaining how persuasive he finds a medical opinion. *Id.* But under the 2017 regulations, an ALJ need no longer give special deference to treating physicians—though the nature of the treating relationship is still relevant when assessing persuasiveness—nor provide "specific and legitimate reasons" for rejecting a treating doctor's opinion. *Id.* Instead, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

### 1. Dr. Lincoln's Medical Opinions

Dr. Lincoln was Jones's primary care provider and treated her on at least three occasions from late 2019 through 2020. (*See* AR 629, 923, 935.) Dr. Lincoln's progress notes reflect generally normal objective findings, although Jones repeatedly told him she felt foggy-headed and scattered. (*Compare, e.g.*, AR 633 *with* AR 629, 695, 935.) Centrally at issue are two fill-in-the-blank forms that Dr. Lincoln completed in November 2020 and (likely) January 2022.[1] In the first of those forms, Dr. Lincoln opined that Jones's impairments precluded her from working an eight-hour workday. (AR 933–34.) Dr. Lincoln believed Jones could sit for less than two hours and stand or walk for less than two hours in an eight-hour workday and that her work pace would be severely limited by her impairments. (AR 933–34.) The second form, completed more than a year later, suggests some improvements: although Dr. Lincoln still opined that Jones could not work an eight-hour day, he believed she could sit for four hours and stand or walk for two hours while her work pace would be moderately limited by her impairments. (AR 1513–14.) The 2020 form attributed Jones's symptoms to "physical and cognitive problems from joint pain and post-concussive syndrome." (AR 933.) The 2022 form was not much more specific,

---

[1] The second form is undated, but fax headers show that it was faxed to Dr. Lincoln on January 13, 2022, and faxed back from him on January 24, 2022. (AR 1513.)

- 4 -

describing her disabling symptoms as "memory, cognitive, and processing difficulties related to fall and concussion." (AR 1513.)

The ALJ found the opinions Dr. Lincoln expressed on the fill-in-the-blank forms were not "particularly well supported by [his] treatment records" or the "longitudinal record." (AR 30.) The ALJ cited specific inconsistencies with pincite references to the medical records: Dr. Lincoln's "physical and mental status examinations of the claimant were largely normal, including normal range of motion, cardiovascular function, mood, and thought content" (AR 30 (citing AR 630, 632, 930)); and Dr. Lincoln regularly found "normal cognitive function," "gait, strength, sensation, and balance" (AR 30 (citing AR 565, 573, 584, 720, 727, 734, 884)). Because Dr. Lincoln's treatment notes contain these normal findings consistently across time without a worsening or improving trend, the ALJ wasn't "cherry-picking" when he relied on them. *Cf. Attmore v. Colvin*, 827 F.3d 872, 877–78 (9th Cir. 2015) (an ALJ impermissibly cherry-picks when highlighting improvements that are not sustained over time or reflective of broader trends). Dr. Lincoln had also previously noted "normal range of motion, cardiovascular function, mood, and thought content." (AR 30 (citing AR 630, 632, 930).) His later assessments did not explain why there was a deterioration, if there was one, in Jones's condition and Jones did not cite to such an explanation in the record. (*See* AR 933–34, 1513–14.)

Jones points to evidence from other providers, for example pain management, supporting Dr. Lincoln's opinion. (Doc. 10 at 13–14.) Indeed, the court's review of the medical records as a whole suggests they could have also supported a finding that Jones was disabled. But "the key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." *Jamerson v. Charter*, 112 F.3d 1064, 1067 (9th Cir. 1997). Where the record evidence "is susceptible to more than one rational interpretation"—as it is here—"it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Because the ALJ provided substantial evidence to support his finding that Dr. Lincoln's assessments were

unpersuasive, his decision must be upheld.

## 2. Dr. Saperstein's Medical Opinions

Like Dr. Lincoln, Dr. Saperstein concluded Jones's impairments precluded an eight-hour workday. (AR 978–79.) Also on a check-box form, Dr. Saperstein indicated that postural orthostatic tachycardia syndrome, migraines, cognitive impairment, and a history of head injuries precluded Jones from working an eight-hour day. (AR 978.) He indicated that Jones is severely limited by pain or fatigue which meant she would be off task for more than 21% of an eight-hour workday. (AR 979.) Dr. Saperstein also noted that Jones has headaches four to six times per month which last two hours or more with pain, fatigue, and other symptoms persisting all day. (AR 978.) He indicated that stress and physical activity increase her symptoms while rest with reclining and/or lying down provide minimal relief. (AR 978.) Dr. Saperstein also noted that Jones's medications cause her "moderate" side effects. (AR 978.)

The ALJ found Dr. Saperstein's medical opinions were "not supported by his treatment records" and "inconsistent" with the record. (AR 30.) The ALJ specifically cited Dr. Saperstein's "benign" examinations "with normal findings on physical and mental status examinations, including normal concentration, affect, comprehension, balance, cranial nerve function, gait, heel walking, toe walking, tandem walking, and coordination." (AR 30 (citing AR 884, 955).) Tellingly, although Dr. Saperstein's check check-box form cited postural orthostatic tachycardia syndrome, "tilt table testing conducted by him months prior to this opinion ruled out postural orthostatic tachycardia syndrome." (AR 30 (citing AR 960–61).) "In addition to being unsupported by his treatment records" the ALJ found Dr. Saperstein's opinion was "inconsistent with the regularity of normal cardiac and neurological findings throughout the record." (AR 30 (citing AR 630, 632, 928–30).)

Jones argues that, like Dr. Lincoln's assessment, the ALJ provided insufficient reasons for rejecting Dr. Saperstein's opinion. (Doc. 10 at 15–16.) But again, support in the treatment notes for a disability finding does not automatically eliminate substantial evidence supporting a non-disability finding; where substantial evidence supports both

findings, the ALJ's determination must be upheld. *See Burch*, 400 F.3d at 679. As the ALJ specifically noted, Dr. Saperstein's check-box opinion noted as an impairment postural orthostatic tachycardia syndrome (AR 978), a medical condition he had ruled out after objective testing four months earlier (AR 947). That inconsistency alone is strong support for the ALJ's rejection of Dr. Saperstein's opinion.

The ALJ provided "more than a mere scintilla" of evidence which "a reasonable mind might accept as adequate to support" the conclusion that Dr. Saperstein's opinions were not persuasive. *Orn*, 495 F.3d at 630 (quoting *Burch*, 400 F.3d at 679). The ALJ also properly considered the supportability and consistency factors for evaluation of medical source opinions. *See* 20 C.F.R. § 416.920c. It was therefore not legal error for the ALJ to reject Dr. Saperstein's opinion.

## C. The ALJ's Evaluation of Jones's Symptom Testimony

Jones argues the ALJ erred by rejecting her subjective complaints about the severity of her impairments. (*See* Doc. 10 at 18–23.) When a claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to cause the severity of the symptoms alleged and there is no evidence of malingering, an ALJ may only reject subjective testimony about the severity of the symptoms in the claimant's particular case by offering "specific, clear and convincing reasons for doing so." *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)). Such findings are sufficiently specific when they permit a reviewing court to conclude that the ALJ "did not arbitrarily discredit claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (simplified).

Jones testified about her symptoms at the administrative hearing. (AR 48–61.) The ALJ determined that her impairments "could reasonably be expected to cause the alleged symptoms" but that her "statements concerning the intensity, persistence and limiting effects of these symptoms" were not "entirely consistent" with the evidence in the record. (AR 24.) Jones argues the ALJ erred by rejecting her symptom testimony in the absence of

specific, clear, and convincing reasons supported by substantial record evidence.[2] (Doc. 10 at 18 (citing AR 25–28.))

Jones challenges the ALJ's use of evidence demonstrating that her symptoms improved with treatment, that she was at times noncompliant with treatment, and that some of her daily activities were purportedly inconsistent with her testimony. (Doc. 10 at 21–22.) The court agrees that the ALJ committed legal errors in the analysis of these pieces of evidence in the rejection of Jones's testimony and cannot "confidently conclude" that the combined effects of those three errors were harmless, as it must to affirm. *See Marsh v. Colvin*, 792 F.3d 1170 (9th Cir. 2015).

First, in finding that the record did not support the "intensity, persistence or limiting effects that [Jones] ascribes to [her] impairments," the ALJ cited Jones's reports that her "fibromyalgia symptoms improved with medications." (AR 25.) "But to reject a claimant's testimony, it is not enough for the ALJ to show that the pain was responsive to treatment; the ALJ must show that the pain was 'controlled,' i.e., no longer debilitating." *Lopez v. Colvin*, 194 F. Supp. 3d 903, 911 (D. Ariz. 2016) (quoting *Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006) (9th Cir. 2016)). Even the evidence the ALJ cited shows that Jones's pain was not "controlled" with fibromyalgia medication. (*See* AR 900 (although "[c]urrent medication regime is providing pain relief by more than 50%," Jones "rate[d] her pain a 7 out of 10.")) The ALJ committed legal error using Jones's responsiveness to treatment as a factor for discounting her symptom testimony without finding her pain was controlled.

Second, the ALJ used Jones's noncompliance with treatment as a factor to discount her symptom testimony, but he failed to consider possible reasons for her noncompliance. (AR 28–29.) That failure was also legal error. *See Lockwood v. Commissioner Social Sec. Admin.*, 397 F. App'x 288, 290 (holding that the ALJ erred by relying on claimant's lack of compliance with treatment to discount their testimony "because the ALJ failed to discuss the possible reasons for the noncompliance . . .").

---

[2] The ALJ did not reject Jones's symptom testimony in full, noting five times when there were consistencies between a claim and Jones's reports and imposing additional limitations on her RFC accordingly. (AR 24–26; 28.)

- 8 -

Third, the ALJ used Jones's daily activities to discount her symptom testimony (*see* AR 25–26, 28) without doing a "transferability" and "substantiality" analysis. *Orn*, 495 F.3d at 639 (citation omitted). An ALJ must find a claimant is able to spend a "*substantial part*" of their day "engaged in pursuits involving the performance of physical functions that are transferable to a work setting" to use daily activities as grounds for an adverse credibility finding. *Id.* (citation omitted) (emphasis added). The ALJ did not do that here. The ALJ discounted Jones's symptom testimony regarding her degenerative disc disease in part due to Jones's activities like walking two miles with her husband a couple times a week, taking down Christmas decorations, and performing some remodeling of her home. (AR 26.) But the ALJ did not evaluate whether these sorts of activities made up a "substantial part" of Jones's day or if such physical functions would be "transferable to a work setting." *Orn*, 495 F.3d at 639 (citation omitted).

The ALJ also did not identify inconsistencies between the daily activities he cited and Jones's testimony and the court does not see any such inconsistencies. (*Compare* AR 26 *with* AR 48–61). *See Ferguson v. O'Malley*, 95 F.4th 1194, 1203 (9th Cir. 2024) (holding that because the ALJ did not explain what inconsistencies there were between the claimant's daily activities and their testimony and the Court could not identify any, those daily activities were "not a specific, clear, and convincing reason" to discount the claimant's testimony). For these reasons, it was legal error for the ALJ to use evidence of Jones's daily activities to discount her symptom testimony.

### IV.   Conclusion

An ALJ's errors in a social security case are harmless if they are "inconsequential to the ultimate nondisability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56. (9th Cir. 2006)). The court cannot "confidently conclude" that the combination of the ALJ's errors were harmless, so it will vacate and remand the ALJ's decision with instructions for the ALJ to reconsider Jones's symptom testimony. *Id.* at 1173 (citation omitted).

**IT IS ORDERED** vacating and remanding the March 4, 2022, decision of the ALJ.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 16th day of September, 2024.

*(signature)*
Honorable Krissa M. Lanham
United States District Judge